IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

BRIAN K. HUDDLESTON                                                                         PLAINTIFF

v.                                         CASE NO.        12-3057

CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                           DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I. Procedural Background:

The plaintiff filed his applications for DIB and SSI on May 8, 2009, alleging an onset date of November 13, 2007, due to plaintiff's mental illness, depression, anxiety disorder and sleep apnea (T. 166). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on April 20, 2010. Plaintiff was present and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 42 years of age and possessed a high school education. The Plaintiff had past relevant work ("PRW") experience as a logo printer, interior installer, and a wiring tech (T. 167).

On March 17, 2012, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's adjustment reaction with mixed anxiety and depression did not meet or equal any Appendix 1 listing. T. 11-12. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform his past relevant work as an order puller/stores laborer T. 17. Alternatively the ALJ also determined, with the assistance of a vocational expert, that the Plaintiff could perform the requirements of representative occupation such as kitchen helper and production work helper. T. 18.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the

decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

A. Step Two Evaluation

The Plaintiff first contends that the ALJ failed to find the Plaintiff's Bilateral Tarsal Tunnel Syndrome[2] and associated foot pain a severe impairment.

---

[2] Tarsal tunnel syndrome refers to compression of the nerve within this canal, but the term has been loosely applied to neuralgia of the posterior tibial nerve resulting from any cause. http://www.merckmanuals.com/ professional/musculoskeletal_and_connective_tissue_disorders/foot_and_ankle_disorders/tarsal_tunnel_syndrome.ht ml?qt=tarsal tunnel syndrome&alt=sh

Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step two of the sequential evaluation process, the claimant bears the burden of proving that he has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). An impairment or combination of impairments is not severe if there is no more than a minimal effect on the claimant's ability to work. *See, e.g., Nguyen*, 75 F.3d at 431.

1. Presented Evidence

When the Plaintiff filed his application for benefits in May 2009 he did not list any problem with his feet but listed "mental illness, depression, anxiety disorder, sleep apnea" as his basis for disability (T. 166). Nor did the Plaintiff list his foot pain as a basis for his inability to work on any subsequent Disability Report. (T 213, 222). The fact that the plaintiff did not allege the impairment as a basis for disability in the application for disability benefits is significant, even if the evidence of the impairment was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001). The Plaintiff did acknowledge that he had pain in both of his feet (T. 196) but he was not taking any medication for the pain nor getting any treatment for his ankles. (T. 197).

The Plaintiff was noted as being obese in March 2006 and having planter warts on his feet (T. 391). In August 2009 the Plaintiff was seen by Dr. Bunting, Ph. D. for a Mental Status and Evaluation of Adaptive Functioning exam. During the initial interview the Plaintiff informed Dr. Bunting that he had "lost 50 pounds in the last 6 month and 10 pounds in the last month, probably from walking". (T. 341). During the exam Dr. Bunting noted that the Plaintiff's

gait was "unremarkable".

Dr. Brownfield noted that the Plaintiff's ankle Dorsiflexion and Plantar Flexion were normal (T. 322) and his Patellar and Achilles reflexes were normal (T. 323). He had no muscle weakness or atrophy, his gait was normal, he could walk heel to toe, and had no difficultly in squatting. (Id.). Notwithstanding the above observations Dr. Brownfield felt that the Plaintiff would have "moderate limitations for prolong standing from foot pain[3]. (T. 324).

In addition the Plaintiff acknowledged that he had no physical limitations in meeting his personal care (T. 199). That he could prepare his own meals, do limited household chores (T. 200). That he goes outside every day and walks or drives a car, and does his own shopping (T. 201). In May 2010 the Plaintiff was seen by Dr. Bruce Robbins for a Nerve Conduction Study/EMG Report. Dr. Robbins found that the "nerve conduction study is consistent with left tarsal tunnel syndrom. There are also changes consistent with an early neuropathy." (T. 426).

2. After Decision Evidence

The ALJ reached his decision on December 7, 2010 (T. 6). After his decision the Plaintiff was seen by Dr. Arp, D.P.M. for ankle pain on February 7, 2011 complaining of numbness and burning in both feet. The Plaintiff stated to Dr. Arp that the **"condition has been present for 6 months with gradual onset"**. (T. 461). That places the Plaintiff's onset date for this complaint around August 2010. This is more than three years after his alleged disability date and one year after filing for disability. Dr. Arp diagnosed the Plaintiff with Tarsal Tunnel syndrome both feet (T. 462). Dr. Arp prescribed Lyrica and administered an injection. On April

---

[3]Dr. Brownfields's actual notes are very difficult to read and the above language is taken from the Request for Medical Advice on April 29, 2009. (T. 371).

4, 2011 the plan was to try physical therapy first and if that did not help would consider surgery (T. 458). On April 28, 2011 Dr. Arp performed a number of surgical procedures on the Plaintiff's left ankle. (T. 451). The court has no knowledge of the surgical success of Dr. Arp's procedure but it is clear that there is no evidence that the TTS constituted a severe impairment prior to August 2010.

The court finds that the ALJ did not commit error in finding that the Plaintiffs's foot pain did not constitute a severe impairment.

## B. Residual Functional Capacity

The Plaintiff next contends that the ALJ committed error in his RFC determination because he made no consideration for the Plaintiff's GAF score, his Bilateral Foot Impairment, and his Obesity. (ECF No. 8, p. 16).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id.* This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a

claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

On August 7, 2009, Nancy A. Bunting, Ph.D., a psychologist, conducted a mental status and evaluation of adaptive functioning of Plaintiff, at the agency's request (Tr. 15, 341). Upon evaluation, Dr. Bunting noted that Plaintiff communicated and interacted in a socially adequate manner except for his poor eye contact and sometimes an irritable, abrupt tone of voice; could communicate in an intelligible and effective manner; had the capacity to cope with the typical cognitive demands of the basic work like tasks; had the ability to sustain his concentration on basic tasks; had the ability to persist and was capable of doing it for short periods of time; and had the capacity to complete tasks within an acceptable period of time (Tr. 346).

On August 21, 2009, Dan Donahue, Ph.D., an agency medical consultant, completed a psychiatric review technique form (PRTF) regarding Plaintiff's mental impairments, finding that Plaintiff had an affective disorder (Tr. 352). Additionally, Dr. Donahue completed a mental residual functional capacity assessment, where he opined that Plaintiff was able to able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work;

complexity of tasks is learned and performed by rote, few variables, little judgment; and supervision required is simple, direct and concrete (unskilled).

1. GAF

The GAF is a numeric scale ranging from zero to one hundred used to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Am. Psychiatric Ass'n 1994) (DSM–IV).

In December 2004 the Plaintiff was assessed with a GAF score of "between 50-55' (T. 277), in January 2005 with a GAF score of 51 (T. 261), in August 2009 with a GAF of 35-40 (T. 335), in March 2011 with a GAF 35. Plaintiff alleges that ALJ erred in his determination of his residual functional capacity as he made no consideration of his repeatedly low Global Assessment of Functioning (GAF) scores.2 See Plaintiff's Brief, at 17. The Eighth Circuit Court of Appeals has recognized that GAF scores are relevant evidence in evaluating a disability claim. *See Pates-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009); *Brueggemann v. Barnhart*, 348 F.3d 689 (8th Cir. 2003). They are not, however, the sole determining factor.

The ALJ considered all of the evidence including all treating and examining physicians' reports (Tr. 13-17). The Eighth Circuit has stated that an absence of a citation to a specific fact in the record does not indicate that the ALJ did not consider such evidence. England v. Astrue, 490 F.3d 1017, 1022 (8th Cir. 1993). Specifically, when a GAF test score is apart of a physician's assessment, the ALJ necessarily considered the test when considering the overall evidence from the physician even if the GAF scores were not mentioned. *Bradley v. Astrue*, 528 F. 3d 1113, 1116 n.3 (8th Cir. 2008). The ALJ does not need to discuss every piece of evidence presented.

-8-

Miller v. Shalala, 8 F.3d 611, 613 (8th Cir. 1993).

2. Obesity

The Plaintiff also contends that the ALJ failed to account for the Plaintiff's obesity in his RFC determination. (ECF No. 8, p. 2).

Social Security Ruling ("SSR") 00-3p, which states that obesity is a "medically determinable impairment" that can constitute a severe impairment under Listing 12.05C, and reminds adjudicators "to consider [obesity's] effects when evaluating disability." SSR 00-3p, 65 Fed. Reg. 31,039, 2000 WL 33952015 (May 15, 2000).

The ALJ in this case specifically stated that he had "given consideration as well to Social Security Ruling 02-1 p, which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitations resulting from the obesity in the residual functional capacity assessment in addition to any limitations resulting from any other physical or mental impairment identified. The undersigned has considered the claimant's obesity in determining the claimant's residual functional capacity.

While obesity can impose a significant work-related limitation, substantial evidence supports the ALJ's rejection of Plaintiff's claim. Nothing in Plaintiff's medical records indicates that a physician ever placed physical limitations on McNamara's ability to perform work-related functions because of her obesity. *See Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004).

The Plaintiff did not list obesity as a basis for his inability to work. (T. 166). The fact

that the plaintiff did not allege the impairment as a basis for her disability in her application for disability benefits is significant, even if the evidence of the impairment was later developed. See Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir.1993); Dunahoo v. Apfel, 241, F. 3d 1033, 1039 (8th Cir. 2001).

3. Dr. Brownfield

Contrary to Plaintiff's allegation, the ALJ properly gave little weight to Dr. Brownfield's opinion regarding Plaintiff's mental limitations because it was inconsistent with the scope of her examination and was based solely on Plaintiff's subjective complaints (Tr. 16, 319-325). See Plaintiff's Brief, at 18 (alleging that the ALJ erroneously dismissed Dr. Brownfield's opinion relying solely on Dr. Bunting's opinion). The ALJ noted that he gave little weight to Dr. Brownfield's opinion regarding Plaintiff's mental limitations because Dr. Brownfield performed only a physical examination, not a psychological examination (Tr. 16). *See Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (stating that the Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist). The ALJ also noted that from a one-time physical examination, Dr. Brownfield opined that Plaintiff had moderate to severe limitations due to psychological problems, which suggested Dr. Brownfield's opinion was based on Plaintiff's subjective complaints (Tr. 16, 324). *See Hilkemeyer v. Barnhart*, 380 F. 3d 441, 446 (8th Cir. 2004) (noting that the ALJ was justified in rejecting a single exam diagnosis based solely on the Plaintiff's subjective complaints). Therefore, the ALJ properly gave little weight to Dr. Brownfield's opinion regarding Plaintiff's mental limitations.

The court finds that the ALJ properly determined the Plaintiff's Residual Functional

-10-

Capacity.

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this August 22, 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE